RACHEL E. KAUFMAN (CAL BAR NO. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Attorney for Plaintiff and the Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TODD DILLON,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**UNIVERSAL PROMOTE, INC.,** a Delaware registered corporation,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Todd Dillon ("Dillon" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Universal Promote, Inc. doing business as Zentap ("Zentap" or "Defendant") to stop Zentap from violating the Telephone Consumer Protection Act by sending unsolicited, autodialed text messages to consumers, and to otherwise obtain injunctive and monetary relief for all persons injured by Zentap's conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences,

and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Dillon is a Wilmington, North Carolina resident.

2. Defendant Zentap is a Delaware registered limited liability company with its head office located in Beverly Hills, California. Zentap does business throughout this District, California, and the United States.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District, and because the wrongful conduct giving rise to this case was directed from this District.

## TCPA BACKGROUND

5. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded

voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

6. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

7. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

8. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

9. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day,. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13. According to online robocall tracking service "YouMail," 4.1 billion robocalls were placed in March 2020 alone, at a rate of 132.5 million per day. www.robocallindex.com last visited Apr. 24, 2020).

14. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and

CLASS ACTION COMPLAINT
-4-

232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

17. Universal Promote, Inc. operates using the d/b/a Zentap.

18. Zentap provides lead generation services to real estate agents.

19. Zentap is open about the success it experienced in its first year of operation, attributing that success purely to cold calling real estate agents:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

CLASS ACTION COMPLAINT
-5-

> **Interview With Kyle James, VP Sales at Zentap | $0 to 7+ Figures in 2 Years | #8 SSP**
> November 11, 2019 • 79 min
>
> In this week's podcast, we sit down with Kyle James, VP Sales at Zentap. Kyle was the first sales hire and founding team member of Zentap. Zentap is a SaaS product / white glove service. Their service automatically creates massive amounts of meaningful and impactful content marketing material, while simultaneously running effective campaigns for individuals in the real estate industry.
> Zentap, with the help of Kyle and the founding team is an insane success story. <u>Kyle scaled the business to 5m in revenue through no tech and pure cold calling in year 1.</u> The company has grown to 50 employees (30 of them being sales, under the leadership of Kyle) in under 2 years.
> Show Links
> https://www.linkedin.com/in/kyle-james-a28591172/                                                    [3]

20.     Zentap markets its services to real estate agents through autodialed phone calls and text messages.

21.     These calls and text messages are being sent without the necessary prior express written consent when sent using an autodialer.

22.     Employees and former employees have posted about their experience working for Zentap, complaining about the cold calling they were involved in.

23.     A former employee wrote in a Glassdoor review, "It is a boiler room setting no room for error, and mainly just cold calling all day long that can get very mundane and wouldn't recommend it to people that aren't sales oriented."[4]

24.     A current employee also complained, claiming they were engaged in 100% cold calling to generate sales:

---

[3] https://www.iheart.com/podcast/269-sales-vs-marketing-52370252/episode/interview-with-kyle-james-vp-sales-53311770/

[4] https://www.glassdoor.co.in/Reviews/Universal-Promote-Reviews-E2009025.htm

> October 2, 2019                                                                 Helpful (3)
>
> **"Junior Account Manager"**
>
> ★☆☆☆☆ ▼  Current Employee - Junior Account Executive in West Hollywood, CA
>
> 🟥 Doesn't Recommend      🟥 Negative Outlook      🟨 No opinion of CEO
>
> I have been working at Zentap full-time for less than a year
>
> **Pros**
> Constant hours 6:30am to 3:30pm. Management ok with you having flexible schedule or hours.
>
> **Cons**
> So many! This company is trying to figure out what to do. Training is awful. Management told employees benefits are available after 90 days. NOT TRUE! The software doesn't work half of the time. The phones don't work half of the time. High pressure sale to real estate agents. No database just linked to realtor.com. <u>100% cold calls!</u> They advertise you can make over $100k! NOT TRUE! Junior Account Managers [5]

25. Job postings for Zentap also make specific reference to placing cold calls that are placed to real estate agents throughout the U.S.:

> **Responsibilities and Duties**
> - <u>Cold Call Realtors Throughout the Country</u>
> - Read Script and Implement Rebuttals
> - Deflect Client Objections, Re-Transition to Close
> - Receive Inbound Calls
> - Call Warm Leads
>
> **Qualifications and Skills**
> - <u>Cold-Calling Experience Preferred</u>
> - Coachable Personality
> - Team-Oriented Mindset  [6]

---

[5] https://www.glassdoor.com/Reviews/Zentap-Reviews-E3044184.htm
[6] https://www.ziprecruiter.com/jobs/universal-promote-c67e50a9/telemarketer-sales-representative-c657f210

CLASS ACTION COMPLAINT
-7-

26.  In sending the unsolicited text messages at issue, Defendant, or a third party acting on its behalf, used an automatic telephone dialing system; hardware and/or software with the capacity to store or produce cellular telephone number to be called, using a random or sequential number generator.  This is evident from the circumstances surrounding the text messages, including the ability to trigger an automated response by replying "help" and "Stop," the text messages' commercial and generic content, and that substantively identical texts were sent to multiple recipients, which is consistent with the use of an automatic telephone dialing system to send text messages.

27.  In an interview with Kyle James, former VP of Sales for Zentap described the daily routine of Zentap sales agents, which includes autodialer training and placing outbound calls using an autodialer:

> Kyle James at Zentap shares with us what a regular 1st-day morning looks like for their new SDRs. Everything that needs to happen before hitting the phones!
>
> **10 things Zentap does BEFORE LUNCH on day one:**

CLASS ACTION COMPLAINT
-8-

> 6. Key messaging points- interactive group role play on how we speak to prospect needs.
>
> 7. SDR script-roleplay. Frequent objections encountered.
>
> 8. CRM, *Dialer* training, appointment etiquette. Live demo and distributing written instructions.
>
> 9. Recorded call analysis. We play two successful SDR recorded calls that led to closed deals.
>
> 10. Demonstrate how to book a quality demo live on the outbound *Dialer*. It helps new hires see that management isn't afraid to roll up their sleeves! [7]

28. There are many online complaints regarding Zentap's unsolicited calls to consumers, many of which indicate the use of an autodialer:

- "Robocall"[8]

- "Spoke with Eric twice. They have no real plan except to post articles and listings on your behalf. When I pointed out to Eric that we had the same exact conversation he hung up on me. They are also spoofing some poor lady's phone number locally, so don't expect a call looking like it is from their actual office. Eric also said he was from Baltimore, but couldn't pronounce it, which is a dead giveaway."[9]

- "I just had a call from this company. The person i was speaking to, either Kyle or Daniel or Mike, claimed they got me through google but really they got me through realtor.com as i later found out from the manager. I don't mind sales calls. I get them all the time, what i do mind is someone calling me telling me how to run my business and trying to insult me that I dont run my business properly. Then shove me with " i have a buyer" crap. So no, you wont get my business. FYI

---

[7] https://predictablerevenue.com/blog/keys-to-effective-onboarding-and-training-for-sdrs
[8] *Id.*
[9] https://www.yelp.com/biz/universal-promote-los-angeles-2

- they called me from a local number pretending they are local. Bay Area agents beware, their number is 510-561-2134."[10]

- "Absolute harassment - refused to stop calling me - would argue with me and yell at me on the phone for telling them to stop spam calling me - they should be fined! Stay far away!"[11]

- "As a Realtor®, I get multiple sales calls every week, especially from companies that want to help me promote my business. No big deal. The guy that called me from this company was a GREAT sales person. I even told him straight up, he's full of s*** and should sell used cars."[12]

- "Very persistent. *After 8 phone calls* I agreed to try the system but after 2 other people got on the line encouraging me to sign up for a year, then 6 months. I asked to cancel but they already had my credit card # and charged me anyway."[13] (emphasis added)

- "Absolutely unprofessional attitude by saleperson @ Universal Promote.  Deceptive practice of bouncing off of local phone numbers.  This company robo calls me repeatedly daily.  I have stated NOT interested and remove me from your list and the calls continue.  Just got off the phone with salesperson that had an attitude with me after I politely asked to be removed from list (again), and was told they don't need my business.  They why do you keep calling? And the 3-4 times a day I am robo called it hangs up on me."[14]

**Plaintiff Received Unsolicited an Autodialed Text Message to His Cell Phone Number from Defendant Despite Being on the DNC List**

29.    Plaintiff Dillon is a real estate agent in North Carolina.

---

[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

30. On October 31, 2018 at 1:58 PM, Plaintiff Dillion received an unsolicited, autodialed text message on his cell phone from Defendant using phone number 910-507-2043:



31. The unsolicited text message advertises Zentap's video commercial services.

32. Plaintiff believes this text message was sent using an autodialer based on the generic content of the text message and because the text instructs him to reply "remove" to unsubscribe.

33. Plaintiff's attorneys texted "help" and "Stop" to 910-507-2043, the phone number that the text message was sent from. Immediate automated responses were generated, indicating that the phone number is hooked up to an autodialer system:



34. Based on another investigation conducted by Plaintiff's attorneys, when 910-507-2043 is called, an automated system identifies the company as being Universal Promote.

35. Plaintiff has never had a relationship with Zentap and has never provided Zentap express written consent to call or text his cell phone number.

36. The unauthorized text message sent by Zentap, as alleged herein, has harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Dillon's use and enjoyment of his cellular phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

37. Seeking redress for these injuries, Dillon, on behalf of himself and a Class of similarly situated individuals, brings suit under the Telephone Consumer

Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed text messages to cellular telephones.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims

38. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

> **Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) text messaged, (2) on the person's cellular telephone number, (3) using a text messaging platform substantially similar to the text messaging platform Defendant used to text message Plaintiff, (4) for whom Defendant claims (a) it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to text message Plaintiff, or (b) it did not obtain prior express consent.

39. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6)

persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definition following appropriate discovery.

40. **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

41. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

> (a) whether Defendant used an automatic telephone dialing system to send text messages to Plaintiff and the members of the Autodialed No Consent Class;
>
> (b) whether Defendant sent the text messages to Plaintiff and the members of the Autodialed No Consent Class without the necessary consent;
>
> (c) whether Defendant's conduct constitutes a violation of the TCPA; and
>
> (d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

42. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent

and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Class.

43.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

# FIRST CAUSE OF ACTION
## Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Autodial No Consent Class)

44. Plaintiff repeats and realleges paragraphs 1 through 43 of this Complaint and incorporates them by reference.

45. Defendant and/or its agents sent unwanted solicitation text messages to cellular telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using an autodialer.

46. These solicitation text messages were sent *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation text messages.

47. Defendant's conduct was negligent, wilful, or knowing.

48. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to between $500 and $1,500 for each and every text message.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Dillon, individually and on behalf of the Class, prays for the following relief:

a) An order certifying the Class as defined above, and appointing Plaintiff as the representative of the Class and his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Dillon requests a jury trial.

Respectfully Submitted,

**TODD DILLON**, individually and on behalf of those similarly situated individuals

Dated: May 11, 2020

*/s/ Rachel E. Kaufman*
Rachel E. Kaufman
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881